

1325 Avenue of the Americas, 19th Floor
New York, NY 10019
212-752-8000   212-752-8393  fax
—
New Jersey
—
Delaware
—
Maryland
—
Texas
—
Florida

Nolan E. Shanahan
Member
Admitted in NY and NJ

Reply to New York Office
Writer's Direct Line: 646.563.8935
Writer's Direct Fax: 646.521.2035
Writer's E-Mail: NShanahan@coleschotz.com

May 13, 2020

**Via ECF**

Hon. Paul G. Gardephe
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

> Re:    *Haua and Otero v. Prodigy Network, LLC, et al.*,
>        20 Civ. 2318 (PGG)

Dear Judge Gardephe:

Defendant Prodigy Shorewood Investment Management, LLC ("PSIM") respectfully submits this letter pursuant to Rule IV(A) of Your Honor's Individual Rules of Practice in Civil Cases to request a pre-motion conference regarding PSIM's anticipated (1) motion to dismiss the Complaint and (2) motion to stay discovery pending resolution of the motion to dismiss.[1] Per Rule IV(A), we requested Plaintiffs' consent to these applications on May 6, 2020. Plaintiffs declined to consent to the relief requested in either of PSIM's anticipated motions.

## I.    The Complaint Must be Dismissed As Against PSIM.

This case relates to Plaintiffs' investment in a co-working and short-term rental apartment project located at 17 John Street in New York City (the "Project"). In their Complaint, Plaintiffs seek to enforce the terms of a purported "side letter" agreement which they contend entitled them to redeem their investment in the Project. For the reasons described below, Plaintiffs do not state a claim against PSIM because PSIM, the investment manager overseeing investments in the Project, was not a party to the side letter. Accordingly, the Complaint, as asserted against PSIM, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] PSIM respectfully reserves the right to identify additional grounds for seeking dismissal and a stay of discovery.

Cole Schotz P.C.

Hon. Paul G. Gardephe
May 13, 2020
Page 2

### A.    Facts Alleged in the Complaint[2]

Plaintiffs invested in the Project pursuant to an Amended and Restated Confidential Private Offering Memorandum of 17 John Preferred Inc. (the "Offering Memorandum"), which, as Plaintiffs acknowledge, stated that investments in the Project could not be voluntarily redeemed ***without the written consent of the Investment Manager***.  (Compl. ¶ 14) (emphasis added).)  The Offering Memorandum provided that PSIM was the "investment manager." (*Id.* ¶ 15.)

Subsequent to Plaintiffs' investment in the Project, on June 13, 2017, they entered into a "Side Letter Agreement" with defendant Prodigy Network LLC ("Prodigy"), in which Prodigy purported to grant Plaintiffs the right to redeem their investment in the Project, upon written notice, during a specified time period.  (Compl. ¶ 18.)  The June 13, 2017 Side Letter (the "Side Letter") is annexed as Exhibit B to the Complaint, and is signed on behalf of Prodigy.  However, it is ***not signed by PSIM***, the Investment Manager under the Offering Memorandum, nor was PSIM otherwise made a party to the Side Letter.[3]

On October 3, 2018, Plaintiffs entered into an amendment to their Side Letter with Prodigy, in which Prodigy purported to extend the time for Plaintiffs to redeem their investment in the Project by 15 months, to September 13, 2019.  (Compl. ¶ 21.)  The amendment to the Side Letter is annexed as Exhibit D to the Complaint.  Like the Side Letter, it is signed on behalf of Prodigy, but not by the Investment Manager, PSIM.

Plaintiffs allege that on June 27, 2019, they submitted to Prodigy a written demand to redeem their investment "pursuant to the June 13, 2017 Side Letter Agreement."  (Compl. ¶ 23.)  They allege that thereafter, on September 9, 2019 they entered into a second amendment to the Side Letter, which purported to grant the Investment Manager additional time to arrange for a sale of Plaintiffs' investment in the Project.  (Compl. ¶ 24.)  The second amendment to the Side Letter, annexed as Exhibit E to the Complaint, states that the extension of time constituted a "modification to the Side Letter dated June 13, 2017 . . . as amended on October 3, 2018," and is signed by Rodrigo Nino, purportedly on behalf of PSIM.

Plaintiffs allege that "[p]ursuant to the Side Letter Agreement, Defendants were required to redeem Plaintiffs' investment by no later than February 12, 2020," but that this redemption demand has not been met.  (Compl. ¶ 25.)

---

[2] The allegations in the Complaint are assumed to be true only for purposes of evaluating Defendants' anticipated motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See generally Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

[3] In addressing a motion to dismiss, a court may consider any "documents attached to the complaint as an exhibit or incorporated in it by reference."  *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (quoting *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted)).

Cole Schotz P.C.

Hon. Paul G. Gardephe
May 13, 2020
Page 3

### B.    Plaintiffs Do Not State a Claim Against PSIM.

The Complaint asserts a single cause of action, alleging breach of contract, against PSIM, Prodigy and defendant 17 John Preferred, Inc.  To state a claim for breach of contract, a complaint must allege "the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages."  *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (internal quotation marks omitted)).  Thus, "[i]n order to state a claim for breach of contract, a party must allege, *inter alia*, the existence of a contract between the parties."  *Morgan Art Found. Ltd. v. McKenzie*, 2019 WL 2725625, at *18 (S.D.N.Y. July 1, 2019).  Plaintiffs do not state a claim against PSIM for breach of the Side Letter.

As Plaintiffs acknowledge in the Complaint, the Offering Memorandum requires the written consent of the Investment Manager before an investor can redeem its interest in the Project.  Here, Plaintiffs seek to enforce redemption rights they believe were granted to them in the Side Letter, and which, they allege, provided them with the necessary Investment Manager consent.  Crucially, however, ***PSIM is not a party to the Side Letter***.  Rather, the parties to the Side Letter were Plaintiffs and Prodigy.  Plaintiffs, therefore, cannot sue PSIM for alleged breach of the Side Letter.  Indeed, "[i]t goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *accord Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007) (it is a "fundamental principle of contract law" that the parties to a contract cannot "bind[ ] nonparties").

The Complaint does allege that PSIM signed the second amendment to the Side Letter, but this does not provide a basis to sue PSIM for breach of the Side Letter either.  The second amendment to the Side Letter, by its own express terms, merely purported to modify the Side Letter, to which PSIM was not a party, by extending the time period identified in the Side Letter. (*See* Ex. E to Compl.) ("Subscriber has requested a modification to the Side Letter dated June 13, 2017 . . . .").  Nowhere in the second amendment to the Side Letter did PSIM agree to be bound by, or otherwise assume the terms of, the Side Letter.

Apparently recognizing that the Side Letter was not effective to provide redemption rights—because PSIM, the Investment Manager, was not a party to it—Plaintiffs suggest in the Complaint that it was Prodigy that was the Investment Manager within the meaning of the Offering Memorandum.  But there are several flaws with this approach, too.

First and foremost, the Complaint itself recognizes—as it must—that the Investment Manager, the written consent of which Plaintiffs needed to redeem their investment, was PSIM. (Compl. ¶ 15).  Plaintiffs cannot escape this fact given the clear identification of PSIM as the

Cole Schotz P.C.

Hon. Paul G. Gardephe
May 13, 2020
Page 4

Investment Manager in the Offering Memorandum, and the absence of any statement in the Offering Memorandum suggesting that Prodigy was to instead fill this role.[4]

Nevertheless, Plaintiffs ostensibly seek to benefit from language in the Offering Memorandum that PSIM "or an affiliate thereof" would serve as Investment Manager.  But the mere allegation that Prodigy and PSIM were "affiliates" does not allow for a plausible inference that Prodigy should be deemed the Investment Manager under the Offering Memorandum. Merely being an "affiliate" of PSIM does not logically support the conclusion that the entity in question is also the Investment Manager vested with the authority to grant redemption rights to investors.  Plaintiffs' logic on this point is fallacious.

Furthermore, the Offering Memorandum states that PSIM *or* an affiliate thereof will serve as Investment Manager; it does not state that PSIM *and* an affiliate thereof will serve as investment manager, and Plaintiffs' own pleading concedes that PSIM was the Investment Manager.  (Compl. ¶ 18) (alleging that Plaintiffs entered into the Side Letter with *Prodigy Network LLC (an affiliate of the Fund's Investment Manager*") (emphasis added).  And while Paragraph VI of the Offering Memorandum, cited in the Complaint, provides that the "Investment Manager may assign and transfer to an affiliate its rights and obligations under the Investment Management Agreement," the Complaint is devoid of any allegation that PSIM ever effectuated such an assignment or transfer to an affiliate which then displaced PSIM as Investment Manager consistent with the disjunctive language in Paragraph VI.

For these reasons, PSIM intends to show, in its motion to dismiss, that the Complaint does not state a claim against it, and must be dismissed under Fed. R. Civ. P. 12(b)(6).

## II.     The Court Should Stay Discovery Pending PSIM's Motion to Dismiss Pursuant to Fed. R. Civ. P. 26(c).

Under Fed. R. Civ. P. 26(c), a court may, "for good cause," issue an order staying discovery.  "[A] pending motion to dismiss may constitute 'good cause'" under the rule. *O'Sullivan v. Deutsche Bank AG*, 2018 WL 1989585, at *4 (S.D.N.Y. Apr. 26, 2018).  A court determining a request for a stay "should consider multiple factors, including the breadth of discovery sought, the burden of responding to it, the prejudice that would result to the party opposing the stay, and the strength of the pending motion forming the basis of the request for stay." *Shulman v. Becker & Poliakoff*, LLP, 2018 WL 4938808, at *2 (S.D.N.Y. Oct. 11, 2018) (citation and quotation marks omitted).  All of these factors support PSIM's request for issuance of a stay.

To satisfy the "strength of the motion" factor, the party seeking a stay "must demonstrate 'substantial arguments for dismissal.'"  *Shulman*, 2018 WL 4938808, at *2 (quoting *O'Sullivan*, 2018 WL 1989585, at *4); *see also Spinelli v. Nat'l Football League*, 2015 WL 7302266, at *2

---

[4] Although the Offering Memorandum is not attached to the complaint as an exhibit, it is incorporated into the Complaint by reference, and may be considered by the Court in connection with PSIM's anticipated motion to dismiss.

Cole Schotz P.C.

Hon. Paul G. Gardephe
May 13, 2020
Page 5

(S.D.N.Y. Nov. 17, 2015) (stay warranted where "the viability of the Plaintiffs' claims is in at least some doubt pending the resolution of the motion[] to dismiss"); *Richards v. N. Shore Long Island Jewish Health Sys*., 2011 WL 4407518, at *2 (E.D.N.Y. Sept. 21, 2011) (stay issued where defendants made "an adequate showing that plaintiff's claims are of questionable merit"). PSIM respectfully submits that its forthcoming motion to dismiss is strong, for the reasons discussed above, and will result in the complete dismissal of the Complaint as against PSIM.

Second, although Plaintiffs have not yet served discovery requests, the allegations in the Complaint suggest that they will seek broad discovery which, concomitantly, will impose an undue burden on PSIM. Indeed, the Complaint cites communications dating as far back as January 2017, and the events described in the Complaint pertain to a more than three-year period. The expected search for ESI alone would be enormously time-consuming, expensive and, given the strength of PSIM's upcoming motion to dismiss, entirely unnecessary. *See HAHA Global, Inc. v. Barclays*, 2020 WL 832341, at *1 (S.D.N.Y. Feb. 2020) (staying discovery pending a motion to dismiss, reasoning that "proceeding with discovery while the motion is pending would waste the parties' resources and would constitute an undue burden" on the defendants where the motion raised "viable grounds" for dismissing the complaint) (citation and quotation marks omitted).

Finally, Plaintiffs would not suffer unfair prejudice from a limited stay of discovery. Critically, "the passage of a reasonable amount of time, without any other form of attendant prejudice, cannot itself constitute prejudice sufficient to defeat a motion to stay discovery. Otherwise, stays of discovery would never be granted given that some delay is inherent in any stay." *O'Sullivan*, 2018 WL 1989585, at *9. In addition, this case was only filed on March 16, 2020, and its relative youth further underscores the absence of any unfair prejudice to Plaintiffs from the issuance of a stay. *See Spinelli*, 2015 WL 7302266, at *2 (finding no prejudice from stay in nearly two-year old case, reasoning that "with the viability of the . . . Complaint unresolved, a delay in discovery, without more, does not amount to unfair prejudice"); *Shulman*, 2018 WL 4938808, at *4 (finding no prejudice from stay pending motion to dismiss where case was "not even a year old").

For these reasons, PSIM respectfully requests that the Court stay discovery pending resolution of its anticipated motion to dismiss.

* * *

Based on the foregoing, PSIM respectfully requests that the Court schedule a pre-motion conference at its earliest convenience.

Respectfully submitted,

*/s/ Nolan E. Shanahan*

Nolan E. Shanahan