# Fishkin Lucks

May 18, 2020

**<u>Via ECF</u>**
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

      Re:   <u>Haua v. Prodigy Network, LLC</u>, 20-cv-2318-PGG

Dear Judge Gardephe:

We represent plaintiffs Jose Antonio Haua and Bibiana Kuri Otero.  This letter responds to the letter of defendant Prodigy Shorewood Management, LLC ("PSIM") requesting a pre-motion conference with respect to its anticipated motion to dismiss and to stay discovery.  ECF No. 22. There are questions of fact that cannot be resolved through a motion to dismiss—primarily, whether PSIM is an "Investment Manager" under the parties' agreement.  For that reason and others, assuming PSIM is permitted to move forward with its motion to dismiss, a discovery stay during its pendency would not be appropriate.

<u>Background</u>

Plaintiffs entered into a Subscription Agreement on June 7, 2017, to purchase $125,000 of Class B-1 Common Stock in, and to make a Class A investor loan in the amount of $375,000 to, 17 John Preferred, Inc.  *See* Compl. ¶¶ 16- 17.  The Subscription Agreement incorporated the terms of a Confidential Private Offering Memorandum of 17 John Preferred, Inc., dated March 15, 2017 (The "Offering Memorandum").  *Id.* ¶ 16.  The Offering Memorandum identified PSIM as the Investment Manager of 17 John Preferred, Inc.  *Id.* ¶ 15.[1]

Following their investment in 17 John Preferred, Inc., Plaintiffs were issued a Side Letter dated June 13, 2017, whereby the Investment Manager agreed to redeem Plaintiffs' investment with a 20% annual compounded return within 90 days of the Investment Manager's receipt of Plaintiffs' written notification, so long as Plaintiffs submitted their written notice within a certain time.  Compl. ¶ 18.  The Side Letter was executed by defendant Prodigy Network, LLC, in its capacity as the Investment Manager of 17 John Preferred, Inc.  *Id.*

In connection with their investment, Plaintiff were also issued a Contract Note dated June 27, 2017, which confirmed their subscription in 17 John Preferred, Inc.  Compl. ¶ 20.  The Contract Note identified Prodigy Network, LLC as the Investment Manager of 17 John Preferred, Inc.

On October 3, 2018, Plaintiffs were issued an Amendment to the Side Letter that altered the terms of the original Side Letter.  Compl. ¶ 20.  Specifically, the Investment Manager agreed to provide Plaintiffs with additional time to submit their request to redeem their investment in 17 John

---

[1] For example, page 44 of the Offering Memorandum states that "Prodigy Shorewood Investment Management, LLC (or an affiliate thereof) will serve as the investment manager."

Hon. Paul G. Gardephe
May 18, 2020
Page 2

Preferred, Inc.  *Id.* ¶ 21.  The Amendment to the original Side Letter was executed by Prodigy Network, LLC, purportedly as the Investment Manager of 17 John Preferred, Inc.  *Id.*

On June 26, 2019, PSIM issued a written statement advising investors in 17 John Preferred, Inc. that PSIM, as the Investment Manager, had suspended bi-annual preferred return payments to investors, including Plaintiffs.  Compl. ¶ 22.  As discovery will reveal, while the June 26 statement was published on Prodigy Network's letterhead, it was signed by Rodrigo Nino for and on behalf of PSIM ("On behalf of Prodigy Shorewood Investment Management, LLC ("PSIM"), the investment manager of the project, we are writing to inform you of the current status of your investment. . .").

After submitting their redemption request pursuant to the terms of the Side Letter and its Amendment, Plaintiffs were issued a Second Amendment to the original Side Letter that again altered the terms of the original Side Letter, to specifically allow the Investment Manager additional time to arrange for and complete the sale of Plaintiffs' investment.  Compl. ¶¶ 23-24. Critically, the Second Amendment, dated September 9, 2019, was executed by PSIM and identified PSIM as the Investment Manager of 17 John Preferred, Inc.  It provided, in part:

> [T]he Subscriber has requested a modification to the Side Letter dated June 13, 2017 (the "Side Letter"), as amended on October 3, 2018. **Upon execution of this Second Amendment to the Side Letter, Prodigy Shorewood Investment Management, LLC, in its capacity as the Investment Manager of the Pref Fund, agrees** to the following:
>
> (i) **The Investment Manager shall be given an additional 120 days to arrange for and complete the sale of Subscriber's Class B-1 Stock, Class A loan and Common Factor**. Such 120 days are in addition to the 90 days from the date of receipt and notification from the Subscriber, which is the period defined in the Side Letter to arrange for an complete the sale.

*See* Exhibit E to Compl. (emphasis added).

After failing to honor the terms of a Side Letter as amended on October 3, 2018, and September 9, 2019, Plaintiffs initiated this lawsuit asserting a claim for breach of contract against PSIM and Prodigy Network, LLC.

<u>PSIM, as the Investment Manager, is Bound by the Terms of the Side Letter and its Amendments</u>

PSIM's assertion that it is not bound by the terms of the original Side Letter because it did not execute that specific agreement completely misses the mark.  By entering into the Second Amendment with Plaintiffs, PSIM explicitly recognized the status of the affairs created by the original Side Letter and its incorporated agreement (*i.e.*, the Investment Manager's obligation to redeem Plaintiffs' investment).  The Second Amendment specifically referenced the original Side Letter and its Amendment, thereby incorporating all the terms and conditions of those agreements by reference.  Through its assent and signature, PSIM ratified the original Side Letter and became bound by its terms. *See Janover v. Bernan Foods, Inc.*, 901 F.Supp. 695 (S.D.N.Y. 1995)

Hon. Paul G. Gardephe
May 18, 2020
Page 3

(although employer did not sign severance agreement that modified original employment agreement, employer was bound by severance agreement where it signed extension agreement, which referenced severance agreement, thus ratifying severance agreement by its conduct) (citations omitted).  At the very least, whether PSIM expressed an intent to be bound to the original Side Letter is a question of fact that cannot be determined at the motion to dismiss stage.  *See, e.g.*, *Arfa v. Zamir*, 55 A.D.3d 508, 869 N.Y.S.2d 390 (1st Dep't 2008) (motion to dismiss based on documentary evidence denied where issue of ratification was an issue of fact).

Similarly, the inconsistency of, among other documents, the Offering Memorandum, the Side Letter and its Amendments, the Contract Note, and the June 26, 2019 statement to investors, regarding which defendant—PSIM, Prodigy Network, or both—actually served as the Investment Manager of 17 John Preferred, Inc., at the very least presents an issue of fact that requires discovery into the parties' relationship and thus cannot be resolved on a motion to dismiss.

<u>A Stay is not Appropriate</u>

Courts do not routinely stay discovery "simply on the basis that a motion to dismiss has been filed."  *Moran v. Flaherty¸* 92-cv-3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992).  The Court should not exercise its "considerable discretion" to stay discovery here.  *Integrated Sys. & Power, Inc. v. Honeywell Int'l Inc.*, 09-cv-5874, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009).

As PSIM acknowledges, the "strength of the[ir] motion" is a factor in considering the propriety of a stay.  *O'Sullivan v. Deutsche Bank AG*, 2013 WL 198585, at *4 S.D.N.Y. Apr. 26, 2018).  For the reasons stated above, this consideration militates against a stay.  PSIM also acknowledges that other considerations include "the nature and complexity of the action," "the breadth of discovery and the burden of responding to it," and "the risk of unfair prejudice to the party opposing the stay."  *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006) (citing *Hachette Distribution, Inc. v. Hudson County News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991)); *see Shulman v. Becker & Poliakoff, LLP*, 17-cv-9330, 2018 WL 4938808) at *2 (S.D.N.Y. Oct. 11, 2018).  This is a simple breach of contract action, and PSIM has not even begun to explain how discovery would be particularly extensive or burdensome.  Separately, Plaintiffs will be prejudiced if a stay were to enter, which would "impede the just and speedy administration of the progress of this lawsuit."  *Hachette Distribution, Inc.*, 136 F.R.D. at 359.

\*\*\*

For these reasons, Plaintiffs respectfully request that this Court set a briefing schedule on PSIM's proposed motion to dismiss so that it can be hastily resolved and the Court can address the merits of this case without any further delay.  Discovery should not be stayed pending the motion.

Respectfully submitted,

Steven M. Lucks

cc.      all counsel of record (via ECF)