UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

| | |
|---|---|
| JOSE ANTONIO HAUA and BIBIANA KURI OTERO,<br><br>                 Plaintiffs,<br><br>            - vs. -<br><br>PRODIGY NETWORK, LLC, a Delaware limited liability company, PRODIGY SHOREWOOD INVESTMENT MANAGEMENT, LLC, and 17 JOHN PREFERRED, INC., a Delaware corporation,<br><br>                 Defendants. | **ORDER**<br><br>20 Civ. 2318 (PGG) (KNF) |

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiffs Jose Antonio Haua and Bibiana Kuri Otero bring this action for breach of contract against Defendants 17 John Preferred, Inc., Prodigy Network, LLC, and Prodigy Shorewood Investment Management, LLC ("PSIM").  (Cmplt. (Dkt. No. 1))

        Defendant PSIM has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 47)

        Plaintiffs have moved for an award of attorneys' fees as against Prodigy Network and 17 John Preferred, which have defaulted.  (Dkt. No. 74)  The Court referred Plaintiffs' motion to Magistrate Judge Kevin N. Fox for a Report and Recommendation ("R&R").  (Dkt. No. 71)  Judge Fox has issued an R&R recommending that Plaintiffs' motion for an award of attorneys' fees be denied.  (Dkt. No. 83)

        For the reasons stated below, PSIM's motion to dismiss will be granted, and this Court will adopt the R&R in its entirety.

**BACKGROUND**

I.   **FACTS**

This is a breach of contract action arising from Plaintiffs' real estate investment. (Cmplt. (Dkt. No. 1))  Plaintiffs are Mexican citizens and residents, and Defendants are a Delaware corporation and two LLCs with no Mexican members.  (Id. ¶¶ 2-6)

According to the Complaint, in January 2017, Prodigy Network solicited Plaintiffs for a real estate investment in a co-working and short-term apartment rental project in the Financial District of Manhattan.  (Id. ¶ 11)  On June 7, 2017, Plaintiffs executed a Subscription Agreement, in which they agreed to purchase 17 John Preferred Class B-1 Common Stock in the amount of $125,000, and to make a Class A Investor Loan to 17 John Preferred in the amount of $375,500, for a total investment of $500,500.[1]  (Id. ¶ 17)

Investments in 17 John Preferred were sold pursuant to the terms of a March 15, 2017 Amended and Restated Confidential Private Offering Memorandum (the "Offering Memorandum").  (Id. ¶ 13)  Under the terms of the Offering Memorandum, holders of Class B Common Stock in 17 John Preferred[2] are not permitted to redeem their stock without written consent of the "Investment Manager," which is defined as "Prodigy Shorewood Investment Management LLC (or an affiliate thereof). . . ."  (Id. ¶¶ 14-15) (emphasis omitted)

---

[1]  Although the parties' briefing indicates that Plaintiffs invested $500,000 in 17 John Preferred (see, e.g., Def. Br. (Dkt. No. 48) at 5; Pltf. Opp. (Dkt. No. 50) at 4), the Court relies on the investment amount pled in the Complaint.

The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

[2] The Offering Memorandum uses the term "Pref Fund" to refer to investments in 17 John Preferred.  (Id. ¶ 15 n.1)

On June 13, 2017, Plaintiffs entered into a Side Letter Agreement ("SLA") with Prodigy Network, pursuant to which Prodigy Network granted Plaintiffs an unconditional right to redeem their investment in full with an annually compounded return of 20%. (Id. ¶ 18) The SLA provides as follows:

> Reference is made to [the Offering Memorandum]. . . . Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Private Offering Memorandum. . . . Upon the making of Subscribers['] [i.e., Plaintiffs'] subscription to the Pref Fund [i.e., investments in 17 John Preferred] and a capital contribution for Class B-1 Common Stock and Class A Loan from and after the Contribution Date, Prodigy Network, LLC, in its capacity as the Investment Manager of the Pref Fund agrees to the following:
>
> (i) The Investment Manager agrees that it will arrange for the sale of Subscribers['] Interests in Pref Fund in the event the Subscriber[s] provide[] written notification to the Investment Manager informing the Investment Manager that the Subscriber[s] would like to sell [their] Class B-1 Common Stock, Class A Loan and Common Factor (the 'Redemption Notification') no earlier than twelve (12)-months after the Subscribers['] contribution and no later than fifteen (15)-months after the Subscribers['] contribution. Upon the Investment Manager's receipt of such notification from the Subscriber[s], the Investment Manager will have 90 days to arrange for and complete the sale of Subscribers['] Class B-1 Common Stock, Class A Loan and Common Factor for an anticipated annually compounded return of 20%.

(Cmplt., Ex. B (Dkt. No. 1) at 18)

On October 3, 2018, Plaintiffs and Prodigy Network agreed to amend the SLA to grant Plaintiffs an additional fifteen months – through September 13, 2019 – "to submit [their] Redemption Notice to the Investment Manager to the extent the Subscriber[s] would like to exercise [their] rights granted under the Side Letter." (Id., Ex. D at 27)

On June 26, 2019, PSIM suspended bi-annual preferred return payments to investors in 17 John Preferred. (Id. ¶ 22) On June 27, 2019, Plaintiffs submitted a written demand to redeem their full equity investment and loan. (Id. ¶ 23)

3

On September 9, 2019, Plaintiffs and PSIM agreed to a second amendment of the SLA pursuant to which PSIM was granted an additional 120 days – through February 12, 2020 – to arrange for and complete the sale of Plaintiffs' investment. (Id. ¶¶ 24-25) The second amendment to the SLA provides as follows:

> [T]he Subscriber[s] ha[ve] requested a modification to the Side Letter dated June 13, 2017 (the "Side Letter"), as amended on October 3, 2018. Upon execution of this Second Amendment to the Side Letter, Prodigy Shorewood Investment Management, LLC, in its capacity as the Investment Manager of the Pref Fund, agrees to the following:
>
> (i) The Investment Manager shall be given an additional 120 days to arrange for and complete the sale of Subscribers['] Class B-1 Stock, Class A loan and Common Factor. Such 120 days are in addition to the 90 days from the date of receipt of notification from the Subscriber[s], which is the period defined in the Side Letter to arrange for an[d] complete the sale.

(Id., Ex. E at 30)[3]

Defendants have refused to honor Plaintiffs' redemption demand. (Id. ¶ 25)

## II.  PROCEDURAL HISTORY

The Complaint was filed on March 16, 2020. (Cmplt. (Dkt. No. 1))

On May 13, 2020, PSIM filed a pre-motion letter seeking permission to file a motion to dismiss under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 22) PSIM also sought a stay of discovery pending resolution of its anticipated motion. (Id.)

On May 19, 2020, this Court set a briefing schedule for PSIM's motion to dismiss and stayed discovery pending resolution of the motion. (Dkt. No. 32)

On June 1, 2020, Plaintiffs moved for a default judgment against Defendants Prodigy Network and 17 John Preferred. (Dkt. No. 34) On August 13, 2020, this Court

---

[3] As in the SLA, the second amendment to the SLA provides that "[c]apitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Private Offering Memorandum." (Id.)

conducted a hearing to consider Plaintiffs' motion. Defendants Prodigy Network and 17 John Preferred did not appear at the hearing. Following the hearing, this Court entered a default judgment against Prodigy Network and 17 John Preferred in the amount of $808,596.96. (Dkt. No. 55)

Plaintiffs served Prodigy Network and 17 John Preferred with restraining notices and information subpoenas on August 25, 2020, which they received on August 31, 2020. (Dkt. Nos. 60, 60-1-60-4)

In an October 14, 2020 letter, Plaintiffs asserted that Prodigy Network and 17 John Preferred had not responded to the information subpoenas or otherwise communicated with Plaintiffs, and sought an order directing those Defendants to fully comply with the information subpoenas by a date certain pursuant to Fed. R. Civ. P. 37. (Id.)

On October 15, 2020, this Court issued an Order directing Prodigy Network and 17 John Preferred to respond to Plaintiffs' restraining notices and information subpoenas by October 25, 2020. (Dkt. No. 61) The Order provides that a failure to comply will constitute grounds for holding Prodigy Network and 17 John Preferred in contempt of court. (Id.)

On November 4, 2020, Plaintiffs moved for an order holding Prodigy Network and 17 John Preferred in contempt of this Court's October 15, 2020 Order, and further ordering (1) civil or criminal penalties against Prodigy Network and 17 John Preferred; and (2) that Plaintiffs be awarded reasonable attorney's fees and costs in connection with their enforcement of the October 15, 2020 Order. (Dkt. No. 64)

On December 3, 2020, this Court conducted a hearing concerning Plaintiffs' motion for an order of contempt as to Prodigy Network and 17 John Preferred. Neither Prodigy Network nor 17 John Preferred appeared at that hearing. Following the hearing, this Court

issued an order holding Prodigy Network and 17 John Preferred in civil contempt for failing to comply with the October 15, 2020 Order, and referred Plaintiffs' application for an award of attorneys' fees and costs to Magistrate Judge Fox for an R&R.  (Dkt. Nos. 70-71)

On September 2, 2021, Judge Fox issued an R&R recommending that Plaintiffs' motion for an award of attorneys' fees and costs be denied.  (Dkt. No. 83)  In his R&R, Judge Fox notifies the parties that they have fourteen days from service of the R&R to file any objections, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  (Id. at 3)  The R&R further states that a "[f]ailure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review."  (Id.) (emphasis omitted)  Neither side has filed objections to the R&R.

## DISCUSSION

I.     **LEGAL STANDARDS**

    A.     **Rule 12(b)(6) Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citation omitted), and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim

is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

B. **Review of a Report and Recommendation**

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a timely objection has been made to the magistrate judge's recommendations, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

Where, as here, no objections are filed to a magistrate judge's R&R – despite clear warning that a failure to file objections will result in a waiver of judicial review – judicial review has been waived. See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); see also Mario v. P

& C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam))); see also Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report." (citing Frank v. Johnson, 968 F.2d 298, 299 (2d Cir. 1992))). This Court has nonetheless reviewed Judge Fox's R&R for clear error.

## II.   ANALYSIS

### A.   Motion to Dismiss

In its motion to dismiss, PSIM argues that it cannot be held liable under the SLA for the following reasons:

1. PSIM is not a party to the SLA (Def. Br. (Dkt. No. 48) at 4, 9-10);

2. the SLA is not a valid contract because it lacks consideration by Plaintiffs (id. at 4, 9-11);

3. the SLA does not confer a valid right of redemption because (a) Plaintiffs did not receive written consent from PSIM, the Investment Manager, to redeem their Class B-1 Common Stock, as required under the Offering Memorandum, and (b) the maturity date of Plaintiffs' Class A Investor Loan was not modified by 17 John Preferred, the only party authorized to do so under the Offering Memorandum (id. at 4-5, 9-14); and

4. none of the agreements at issue "specify that PSIM, the Investment Manager, would be the party responsible for making any investor repayments." (Id. at 14)

#### 1.   Whether PSIM May Be Held Liable Under the SLA as a Non-Signatory

PSIM asserts that "black letter law dictates that Plaintiffs cannot enforce the Side Letter against PSIM because it is not a party thereto." (Id. at 9) Plaintiffs argue that, while

PSIM is not a party to the SLA, PSIM ratified the SLA when it executed the second amendment to the SLA in September 2019.  (Pltf. Opp. (Dkt. No. 50) at 4, 10-11)  In response, PSIM argues that Plaintiffs have not adequately alleged that it ratified the SLA, because "ratification 'imputes an agent's conduct to a principal who condones those acts and accepts the benefits of them,'" and "[n]owhere in the Complaint, or even in their opposition, do Plaintiffs allege that Prodigy was PSIM's agent or that . . . PSIM 'accept[ed] the benefits' of Prodigy's execution of the Side Letter."  (Def. Reply (Dkt. No. 42) at 7 (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 100 (2d Cir. 2003))

Under New York law, "a party may ratify a contract 'by intentionally accepting benefits under the contract, by remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it, or by acting upon it, performing under it, or affirmatively acknowledging it.'"[4] In re Lehman Bros. Holdings Inc., 541 B.R. 551, 572 (S.D.N.Y. 2015) (quoting VKK Corp. v. Nat'l Football League, 244 F.3d 114, 122 (2d Cir. 2001)).  "Similarly, 'where a party to an agreement has actual knowledge of another party's breach and continues to perform under and accept the benefits of the contract, such continuing performance constitutes a waiver of the breach.'"  Id. (quoting VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A., 594 F. Supp. 2d 334, 342 (S.D.N.Y. 2008)).

Moreover,

> "[e]ven in the absence of actual or apparent authority, a person may still be liable as a principal if he affirms or ratifies an act done by one who purports to be acting for the ratifier.  Under New York law, it is possible to imply ratification if the principal retains the benefit of an unauthorized transaction with knowledge of the material facts.  Thus, ratification is a form of retroactive activity that occurs when the principal, having knowledge of the material facts, accepts the benefits of the agent's action already made on his behalf."

---

[4] The Complaint asserts – and the parties do not dispute – that New York law governs.  (See Cmplt. (Dkt. No. 1) ¶ 8)

9

Precedo Cap. Grp. Inc. v. Twitter Inc., 33 F. Supp. 3d 245, 254 (S.D.N.Y. 2014) (quoting Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp. 2d 303, 318 (S.D.N.Y. 2006)). "'Key to the concept of ratification is intent, express or implied, to affirm or adopt the acts of another.'" Id. (quoting Orix Credit All. v. Phillips-Mahnen, Inc., No. 89 Civ. 8376 (THK), 1993 WL 183766, at *5 (S.D.N.Y. May 26, 1993)).

Here, while Plaintiffs have not expressly alleged the existence of an agency relationship between PSIM and Prodigy Network, they have alleged that Prodigy Network executed the SLA purporting to act as the Investment Manager. (See SLA, Cmplt. Ex. B (Dkt. No. 1) at 18 ("Prodigy Network, LLC, in its capacity as the Investment Manager of the Pref Fund agrees to the following. . . .")) Plaintiffs further allege that PSIM adopted Prodigy Network's actions when it executed the second amendment to the SLA in its capacity as the Investment Manager. (See SLA second amendment, Cmplt. Ex. E (Dkt. No. 1) at 30 ("Prodigy Shorewood Investment Management, LLC, in its capacity as the Investment Manager of the Pref Fund, agrees to the following. . . .")) Plaintiffs have thus adequately alleged that PSIM ratified the SLA by "affirmatively acknowledging it." In re Lehman Bros., 541 B.R. at 572.

PSIM argues, however, that the second amendment to the SLA "merely purported to modify the Side Letter, to which PSIM was not a party, by extending the time period identified in the Side Letter. . . . [N]owhere in the second amendment did PSIM agree to be bound by, or otherwise adopt, any obligations allegedly owed to Plaintiffs pursuant to the Side Letter." (Def. Reply (Dkt. No. 42) at 8)  This argument is not persuasive.

Pursuant to the second amendment to the SLA, PSIM agreed, "in its capacity as Investment Manager of the Pref Fund," that "[t]he Investment Manager [i.e., PSIM] shall be given an additional 120 days to arrange for and complete the sale of Subscribers['] Class B-1

Stock, Class A Loan and Common Factor." (See SLA second amendment, Cmplt. Ex. E (Dkt. No. 1) at 30)  PSIM does not dispute that it was acting in its capacity as Investment Manager when it executed the second amendment to the SLA.  Thus, the obvious implication of PSIM's agreement to extend its time to complete the sale of Plaintiffs' investment is that it would, in fact, complete the sale of Plaintiffs' investment.

Moreover, "[r]atification also occurs when a principal fails to object to the unauthorized act of another, despite an opportunity to do so."  In re Vargas Realty Enters., Inc., 440 B.R. 224, 235 (S.D.N.Y. 2010) (citing Orix Credit, 1993 WL 183766, at *5; RLI Ins. Co. v. Athan Contracting Corp., 667 F. Supp. 2d 229, 235 (E.D.N.Y. 2009)).  PSIM had an opportunity to object to the SLA at the time it executed the second amendment to the SLA.  Instead of objecting, PSIM extended its time to complete the obligations created under the SLA.  PSIM does not argue otherwise.

Accordingly, Plaintiffs have adequately alleged that by executing the second amendment to the SLA, PSIM ratified the SLA.  See In re Vargas, 440 B.R. at 235 (finding that appellants ratified unauthorized execution of a loan and mortgage on their behalf "twice:  first, when Appellants failed to object or attempt to undo the transaction upon learning of it; and, second, when Appellants executed a Pre–Negotiation Agreement that acknowledged their 'legal and enforceable obligations' to Appellee under the CFA note and mortgage 'without any defenses, counterclaims or offsets'"); Janover v. Bernan Foods, Inc., 901 F. Supp. 695, 701 (S.D.N.Y. 1995) ("It is clear that Bernan's subsequent signing of the Extension Agreement, which referenced the Severance Agreement, would qualify as the Severance Agreement being 'otherwise ratified by [Bernan's] conduct.'" (citing DFI Commc'ns, Inc. v. Greenberg, 41

11

N.Y.2d 602, 606 (1977); Karel v. Clark, 129 A.D.2d 773, 773-74 (2d Dept. 1987))) (alteration in Janover).

### 2. Whether the SLA is Unenforceable for Lack of Consideration

PSIM argues that the SLA is not a valid contract because Plaintiffs did not "provide[] any consideration in exchange for the obligations they allege are owed to them under the Side Letter." (Def. Br. (Dkt. No. 48) at 10)  Plaintiffs respond that no independent consideration is required in connection with the SLA, because it modifies their redemption rights as defined in the Subscription Agreement and the Offering Memorandum.  (Pltf. Opp. (Dkt. No. 50) at 8-9)  Plaintiffs further argue that, in any event, their investment in 17 John Preferred serves as consideration for the SLA.  (Id. at 9)

New York law provides that a modification to a contract "shall not be invalid because of the absence of consideration, provided that the . . . [modification is] in writing and signed by the party against whom it is sought to enforce the change [or] modification[,] . . . or by his agent."  N.Y. GEN. OBLIG. LAW ("GBL") § 5-1103; see also Stralia Mar. S.A. v. Praxis Energy Agents DMCC, 431 F. Supp. 3d 366, 371 (S.D.N.Y. 2019).

Here, Plaintiffs seek to enforce the SLA – which was signed by Prodigy Network – against PSIM.  While Plaintiffs have adequately alleged that PSIM ratified the SLA, they have not addressed whether ratification – either generally or in the circumstances presented here – may satisfy GBL § 5-1103's requirement that modifications be signed by the party against whom enforcement is sought.  Moreover, the Complaint does not allege an agency relationship between PSIM and Prodigy Network at the time the SLA was executed, and Plaintiffs do not argue that Prodigy Network was acting as PSIM's agent at the time the SLA was executed.  Accordingly,

the Complaint does not provide an adequate basis for enforcing the SLA against PSIM as a modification of the Subscription Agreement and Offering Memorandum.

Plaintiffs also argue that they provided consideration for the SLA in the form of their investment in 17 John Preferred. They assert that they "entered into the Subscription Agreement (on June 7, 2017) and the SLA (on June 13, 2017) before they made their investment (on June 14, 2017)." (Pltf. Opp. (Dkt. No. 50) at 9 (citing Cmplt. (Dkt. No. 1) ¶¶ 13, 18, 20); Contract Note, Haua Decl. Ex. A (Dkt. No. 51-1))) (emphasis in original)

Under New York law, "'[a] valuable consideration . . . may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other[.]'" Lebedev v. Blavatnik, 193 A.D.3d 175, 183 (1st Dept. 2021) (quoting Hamer v. Sidway, 124 N.Y. 538, 545 (1891)). "Indeed, 'any basic contemporary definition would include the idea that [consideration] consists of either a benefit to the promisor or a detriment to the promise[.]" Id. (quoting Weiner v. McGraw–Hill, Inc., 57 N.Y.2d 458, 464 (1982)) (alteration in Lebedev). "However, 'generally, past consideration is no consideration and cannot support an agreement because the detriment did not induce the promise.'" Id. (quoting Korff v. Corbett, 155 A.D.3d 405, 408 (1st Dept. 2017)); see also Murray v. Northrop Grumman Info. Tech., Inc., 444 F.3d 169, 178 (2d Cir. 2006) ("A promise to perform a pre-existing legal obligation does not amount to consideration." (citing Goncalves v. Regent Int'l Hotels, Ltd., 58 N.Y.2d 206, 220 (1983)).

"Ordinarily, the question of consideration is one of fact. . . . However, when it is clear from the face of the pleading and the terms of the contract that a promise is gratuitous, the complaint will be dismissed." Startech, Inc. v. VSA Arts, 126 F. Supp. 2d 234, 236–37 (S.D.N.Y. 2000) (citing Daniel Goldreyer, Ltd. v. Van de Wetering, 217 A.D.2d 434, 438-39 (1st

13

Dept. 1995); Mun. Grocery Stores, Inc. v. E. Milk & Cream Co., Inc., 233 A.D. 764, 764 (2d Dept. 1931)).

In arguing that their investment in 17 John Preferred may serve as consideration for the SLA, Plaintiffs submit a June 27, 2017 "Contract Note." (See Contract Note, Haua Decl. Ex. A (Dkt. No. 51-1)) Plaintiffs argue that the Contract Note is properly considered by this Court because it is referenced in the Complaint (Pltf. Opp. (Dkt. No. 50) at 6 n.1 (citing Cmplt. (Dkt. No. 1) ¶ 20; Moore v. Newton, 220 F. Supp. 3d 275, 280 n.5 (E.D.N.Y. 2016))), and PSIM does not contend otherwise. Because the Complaint references the Contract Note (see Cmplt. (Dkt. No. 1) ¶ 20 ("[T]he Fund's administrator subsequently issued a Contract Note dated June 27, 2017 confirming Plaintiff's investment in the Fund."), the Court will consider it in resolving PSIM's motion to dismiss. See DiFolco, 622 F.3d at 111.

The Administrator of 17 John Preferred issued the Contract Note to Plaintiffs on June 27, 2017. The Contract Note provides as follows:

> In accordance with the terms of the Subscription Agreement for the 17 John Preferred Inc, Class B-1 Common Stock and Class A Investor Loan, (the "Fund") executed by you and approved by NESF Fund Services Corp. (the "Administrator"), we have confirmed that the Fund has received your proceeds in the amount of $500,000.00 (Five Hundred Thousand dollars).

(Contract Note, Haua Decl. Ex. A (Dkt. No. 51-1)) The Contract Note also refers to an "effective investment date" of June 14, 2017. (Id.)

While the Contract Note shows an "effective investment date" one day after Plaintiffs executed the SLA, the Contract Note merely confirms that the Administrator of 17 John Preferred received Plaintiffs' investment funds as of that date. Standing alone, that fact does not support an inference that Plaintiffs' investment was consideration for the SLA. Indeed, at the time that Plaintiffs executed the SLA, they had already agreed to invest in 17 John

Preferred pursuant to the Subscription Agreement.  Their investment funds were thus "past consideration . . . [which] cannot support an agreement. . . ." Lebedev, 193 A.D.3d at 183 (quoting Korff, 155 A.D.3d at 408)).

Because Plaintiffs have not adequately alleged that (1) the SLA may be enforced against PSIM as a modification to the Subscription Agreement; or (2) that the SLA is supported by independent consideration, their breach of contract claim against PSIM will be dismissed.

### B.  Leave to Amend

In their opposition, Plaintiffs request leave to amend in the event that the Court grants PSIM's motion.  (Pltf. Opp. (Dkt. No. 50) at 12 n.6)  PSIM argues that leave to amend should be denied, because no amendment can change the fact "that PSIM is not a party to the Side Letter and that the Side Letter is unenforceable for lack of consideration. . . ."  (Def. Br. (Dkt. No. 48) at 14-15)

District courts "ha[ve] broad discretion in determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000), and "leave to amend should be freely granted when 'justice so requires[.]'" Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)); see also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting Foman v. Davis, 371 U.S. 178, 182 (1962))).  Leave to amend may be denied, however, due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . futility of amendment, etc." Foman, 371 U.S. at 182.

15

Here, Plaintiffs have not previously amended the Complaint. Moreover, the deficiencies in the Complaint may be subject to cure. Accordingly, Plaintiffs will be granted leave to amend. See Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003) ("[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).[5]

### C. Plaintiffs' Motion for an Award of Attorneys' Fees and Costs

After this Court issued its December 7, 2020 order finding Prodigy Network and 17 John Preferred in civil contempt, Plaintiffs moved for an award of attorneys' fees and costs. (Dkt. No. 74) Plaintiffs seek an award of $13,065.90 in attorneys' fees and costs they incurred in connection with their contempt motion. (Id.) Plaintiffs have submitted billing records and invoices in support of their application (see Lucks Decl. (Dkt. No. 74-1); Lucks Decl. Ex. A (Dkt. No. 74-2)), which is unopposed.

On September 2, 2021, Magistrate Judge Fox issued an R&R recommending that Plaintiffs' motion be denied. (R&R (Dkt. No. 83)) As discussed above, in his R&R, Judge Fox provides clear notice of the fourteen-day deadline for making objections to the R&R, and the fact that a failure to object will preclude appellate review. (Id. at 3-4) No party has filed objections to the R&R.

Judge Fox concludes that Plaintiffs' motion for an award of attorneys' fees and costs is deficient, because it does not comply with Local Civil Rule 7.1(a)'s requirements for submitting motion papers. (Id. at 2-3) Local Civil Rule 7.1(a) provides as follows:

---

[5] The Subscription Agreement – pursuant to which Plaintiffs agreed to invest in 17 John Preferred, and which the SLA allegedly modifies – will be submitted as an exhibit to any amended complaint.

16

> (a) Except for letter-motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court, all motions shall include the following motion papers:
>
>> (1) A notice of motion, or an order to show cause signed by the Court, which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion;
>>
>> (2) A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined; and
>>
>> (3) Supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion.

Local Civ. R. 7.1(a).

Judge Fox finds that Plaintiffs' motion does not "'specify the applicable rules or statutes pursuant to which the motion is brought,'" as required by Rule 7.1(a)(1). (R&R (Dkt. No. 83) at 3 (quoting Local Civ. R. 7.1(a)(1)))  He also finds that Plaintiffs "failed to file a memorandum of law setting forth the cases and other authorities relied upon by them in support of the motion," as required by Rule 7.1(a)(2). (Id.)  Judge Fox concludes that these "deficienc[ies] . . . deprive[] the Court of the ability to assess the legal authority(ies) and legal argument(s), if any, the plaintiffs believe support an award of their attorneys' fees and costs," noting that "[f]ailing 'to submit a memorandum of law, [as required by the Local Rule 7.1(a)(2),] standing alone, is sufficient cause for . . . denying a motion[, without reaching] the merits [of the motion].'"  (Id. (quoting E. 65 St. Realty Corp. v. Rinzler, No. 98 Civ. 6555 (RCC), 2000 WL 303279, at *2 (S.D.N.Y. March 22, 2000)) (last three alterations in R&R)

This Court finds no clear error in Judge Fox's conclusion.  Accordingly, the R&R will be adopted in its entirety, and Plaintiffs' motion for an award of attorneys' fees and costs will be denied without prejudice.

## CONCLUSION

For the reasons stated above, Defendant Prodigy Shorewood Investment Management, LLC's motion to dismiss (Dkt. No. 47) is granted, with leave to amend.  Plaintiffs' motion for an award of attorneys' fees and costs as against Prodigy Network, LLC, and 17 John Preferred, Inc. (Dkt. No. 74) is denied without prejudice, and the R&R (Dkt. No. 83) is adopted in its entirety.  Any motion for leave to file an amended complaint is to be submitted by October 12, 2021.  The proposed amended complaint will be attached as an exhibit to the motion.

Dated: New York, New York
       September 29, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge